In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00113-CR
______________________________


JEREMY RAY BROWN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 8th Judicial District Court
Franklin County, Texas
Trial Court No. 7675


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            A jury convicted Jeremy Ray Brown of aggravated sexual assault of a child and assessed
punishment at seventeen years' imprisonment.


 Brown appeals. We reverse the judgment of the trial
court and remand for a new trial.
Background
            Brown lived with and worked for Anthony Huggins, who had two children, including a
ten-year-old daughter, A.N.H. A.N.H. performed oral sex on Brown at least once during the
four-plus months Brown stayed with the Huggins family. A.N.H. told her father about Brown's
sexual encounters with her. Huggins confronted Brown and offered him two options: Huggins
would call the sheriff and have Brown arrested, or Brown could sign a contract and give Huggins
his horses, saddles, and horse trailer. In exchange, Huggins would not report Brown's conduct to the
authorities. Brown chose the second option.
            The next day, Brown regretted his choice and wanted to get his property back. He contacted
the Franklin County Sheriff's Office and asked Deputy David Reeder to act as a civil standby while
Brown retrieved his property from Huggins. Reeder accompanied Brown to Huggins' residence.
            While there, Reeder asked Huggins why he had Brown's property. Eventually, Huggins and
his girlfriend, Cindy Villarrell, told Reeder about the events leading up to the agreement with Brown. 
As proof of the agreement, Huggins took the written contract signed by Brown out of his wallet and
showed it to Reeder. 
            Reeder reported the incident to Lieutenant Gary Allen of the Franklin County Sheriff's Office. 
Allen arranged for A.N.H. to be interviewed by Kathy Smedley, a counselor with the Child
Advocacy Center. The interview was videotaped. In the interview, A.N.H. said Brown touched her
breasts and vagina ten times and made her suck his "privacy" twenty times. A.N.H. also stated that
the first two people she told about this were her father and Villarrell and that she had also told
several other people, including her brother, aunt, and uncle.
            Later, Allen sat with Brown in the patrol car and explained that A.N.H. had alleged Brown
spanked her and made her perform oral sex on him. Brown told Allen "that it had happened" and
agreed to go to the sheriff's office with him to make a statement. In that videotaped statement,
Brown admitted that, on one occasion, A.N.H. had performed oral sex on him.
            At trial, during Allen's testimony, the State introduced Brown's recorded statement. The
State also called Smedley to testify and introduced the videotaped interview of A.N.H. during
Smedley's testimony.
Discussion
            Brown contends that the trial court erred in allowing Smedley to testify about her interview
with A.N.H. and that it was also error to admit the videotape of that interview. He asserts Smedley
was not the proper "outcry witness" under Article 38.072 of the Texas Code of Criminal Procedure
because A.N.H. had made specific allegations of sexual assault to other adults before talking to
Smedley. We agree.
            We review the trial court's decision to admit or exclude evidence under an abuse of discretion
standard. See Green v. State, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996); Montgomery v. State,
810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990). We will not reverse a trial court whose ruling was
within the "zone of reasonable disagreement." Green, 934 S.W.2d at 102; Montgomery, 810 S.W.2d
at 391 (op. on reh'g).
            In cases involving certain sex crimes against children, Article 38.072 provides an exception
to the hearsay rule for testimony by "outcry witnesses" when specific requirements are met. See Tex.
Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). An outcry witness is the first person, eighteen
years of age or older, other than the defendant, to whom the child victim made a statement about the
offense. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(2). In this case, Smedley was called as
an outcry witness to narrate and explain as the videotape of her interview with A.N.H. was played
for the jury.
            It is undisputed that A.N.H. made a statement about the offense to her father and Villarrell
before she ever spoke with Smedley. Because of this revelation, Huggins entered into the agreement
with Brown involving the forfeiture of Brown's property. However, a "statement about the offense"
means more than a general allusion to sexual abuse. It must describe the alleged offense in some
discernible manner. Thomas v. State, 1 S.W.3d 138, 140–41 (Tex. App.—Texarkana 1999, pet.
ref'd) (citing Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)). The trial court did not
hold a hearing in which the parties presented testimony from potential outcry witnesses. The State
asserts Brown therefore failed to meet his burden to show that someone other than the State's
proposed witness was the proper outcry witness. See In re Z.L.B., 102 S.W.3d 120, 123 (Tex. 2003)
(citing Hayden v. State, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd)). 
We find there is sufficient evidence in the record, however, to determine that Smedley was not the
proper outcry witness.
            The State filed several "Notice of Outcry Statements" as required by Article 38.072 in order
to present an outcry witness at trial. See Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1). Two
of the notices included a summary of the statements A.N.H. had made to her father and to Villarrell. 
The summary of the outcry statement made to Huggins related that A.N.H. "[s]aid that Jeremey [sic]
Brown had been making her have oral sex with him by putting his penis in her mouth." The
summary of the outcry statement made to Villarrell included that A.N.H. "[t]old Cindy Villarrell that
Jeremey [sic] Brown had been 'messing around with her' and made [A.N.H.] 'suck his dick.'" During
the hearing to determine if Smedley was the proper outcry witness, the prosecutor stated that A.N.H
had told Huggins and Villarrell that Brown "made her suck on his thing."
            At trial, the State asserted Smedley was the proper outcry witness because she was the person
to whom A.N.H. made the most detailed statement about the offense. We have previously held the
proper outcry witness is not to be determined by comparing the statements the child gave to different
individuals and then deciding which person received the most detailed statement about the offense. 
Broderick v. State, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd); see Reed v. State, 974
S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet. ref'd). Rather, as discussed above,
Article 38.072 contemplates allowing the first person to whom the child described the offense in
some discernible manner to testify about the statements the child made. Garcia, 792 S.W.2d at 91;
Broderick, 35 S.W.3d at 73.
            On appeal, the State asserts the statements made to Huggins and Villarrell were not specific
enough to qualify as outcry statements, thereby making Smedley the only proper outcry witness. In
support of this, the State relies on Hanson v. State, 180 S.W.3d 726 (Tex. App.—Waco 2005, no
pet.). In Hanson, the Waco court said, "The proper outcry witness is the adult to whom the
complainant first tells 'how, when, and where' he was assaulted." Id. The State contends Huggins
and Villarrell are not proper outcry witnesses because A.N.H. did not tell them when or where she
was assaulted. 
            The court in Hanson cited Sims v. State, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet.
ref'd), and Reed, 974 S.W.2d at 841–42. In Sims and Reed, the reviewing courts held that a trial
court does not abuse its discretion in designating as an outcry witness a person to whom a child told
how, when, and where the offense occurred. Sims, 12 S.W.3d at 500; Reed, 974 S.W.2d at 842. If
a child tells someone "how, when, and where" an offense occurred, this is sufficient to be a proper
outcry statement. However, there is no suggestion in either of these cases that the details of "how,
when, and where" are necessary to constitute a proper outcry statement. Sims, 12 S.W.3d at 500;
Reed, 974 S.W.2d at 841–42. We also decline to imply such a requirement. We instead rely on the
well-established rule that, to be a proper outcry statement, the child's statement to the witness must 
describe the alleged offense in some discernible manner and must be more than a general allusion
to sexual abuse. See Garcia, 792 S.W.2d at 91; Hayden, 928 S.W.2d at 231; Villalon v. State, 805
S.W.2d 588, 592 (Tex. App.—Corpus Christi 1991, no pet.). 
            The evidence before the trial court was sufficient to show that A.N.H. had described the
offense in a discernible manner to an adult before she talked with Smedley. In fact, the summary
of the outcry statement to Huggins closely tracks the language of the statute defining aggravated
sexual assault of a child—the offense for which Brown was convicted. See Tex. Pen. Code Ann.
§ 22.021(a)(B)(ii) (Vernon Supp. 2005). Because Smedley was not the first adult to whom A.N.H.
made a statement which described the offense in a discernible manner, Smedley would ordinarily
be prohibited from testifying as an outcry witness. The State asserts, however, that in this case
Smedley was only one of multiple outcry witnesses whose testimony would have been properly
admissible.
            Admissible outcry witness testimony is not person-specific, but event-specific. See
Broderick, 35 S.W.3d at 73. In cases where a child has been victim to more than one instance of
sexual assault, it is possible to have more than one proper outcry witness. However, before more
than one outcry witness may testify, it must be determined the outcry concerned different events and
was not simply a repetition of the same event told to different individuals. Id. 
            The outcry statements in this case were not event-specific enough to allow the trial court to
conclude there were multiple proper outcry witnesses. Brown was indicted by three separate
indictments, each of which contained three counts. The State elected to submit to the jury only
allegations of oral sex. So, it is conceivable A.N.H. may have described one instance of sexual
assault to Huggins, another to Villarrell, and yet another to Smedley. But, the statements made to
Huggins, Villarrell, and Smedley were not event-specific enough to show that they concerned
separate and discrete events.
            The outcry statements in this case are distinguishable from the outcry statements in a case
such as Hernandez v. State, 973 S.W.2d 787 (Tex. App.—Austin 1998, pet. ref'd). In that case, the
first outcry witness described the child's account of an incident that took place in the defendant's
truck while it was parked in the woods near a lake. Id. at 788. The second witness testified to the
child's outcry regarding conduct that took place while the defendant and the child were showering
together in the defendant's bathroom. Id. There, the Austin court correctly held that, when a child
describes to different witnesses discrete events occurring at different locations and times, each
witness may testify as an outcry witness even though the two occurrences each violated the same
criminal statute. Id. at 789.
            Here, the statements to Huggins, Villarrell, and Smedley involved the same conduct: Brown
had forced A.N.H. to perform oral sex on him. No attempt was made to present evidence that would
distinguish the events described to Huggins and Villarrell from the events described to Smedley. 
Therefore, the record does not demonstrate that the conduct which A.N.H. described to Huggins and
Villarrell concern discrete events at different times. See Jones v. State, 92 S.W.3d 619, 622 (Tex.
App.—Austin 2002, no pet.). Perhaps Smedley could have qualified as the outcry witness for that
portion of A.N.H.'s statement regarding the touching of the breasts and genital area, but since A.N.H.
had previously described the allegations of oral sex to her father in a discernible manner and since
the statements to Smedley regarding oral sex were not event-specific enough to determine that
A.N.H. was referring to separate, discrete acts, Smedley did not qualify as the outcry witness
regarding the oral sex allegations, the only offense submitted to the jury.
            Smedley was not a proper outcry witness because A.N.H. had made a statement which
described the offense in a discernible manner to an adult before talking to Smedley. Multiple outcry
witnesses were not proper in this case because it cannot be determined that the statements which
A.N.H. made to different adults concerned separate and discrete offenses. Accordingly, we hold the
trial court abused its discretion by allowing Smedley to testify about the interview she conducted
with A.N.H. and by admitting the videotape of that interview.
            Brown raises three separate points of error, each challenging the admission of Smedley's
testimony and the videotape. Because we have already concluded it was error to allow Smedley to
testify as an outcry witness, which testimony included Smedley's videotaped interview of A.N.H.,
it is unnecessary to consider Brown's remaining points of error, including whether the videotape of
A.N.H.'s interview by Smedley was inadmissible on other grounds.
            We must now consider whether this error affected Brown's substantial rights. See Tex. R.
App. P. 44.2(b). Improper admission of hearsay evidence is nonconstitutional error. See Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). For claims of nonconstitutional error, the
Texas Court of Criminal Appeals has held that "a conviction should not be overturned unless, after
examining the record as a whole, a court concludes that an error may have had 'substantial influence'
on the outcome of the proceeding." Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002). 
In other words, if we have "'a grave doubt' that the result was free from the substantial influence of
the error," then we must reverse. Id. A "grave doubt" means that "in the judge's mind, the matter
is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." 
Id. at 637–38 (citing O'Neal v. McAninch, 513 U.S. 432, 433–36 (1995)). Thus, "in cases of grave
doubt as to harmlessness the petitioner must win." Burnett, 88 S.W.3d at 638. We hold the
admission of Smedley's testimony and the videotape of the interview likely had a substantial impact
on the jury's verdict, requiring reversal.
            In contrast with previous cases before this Court, the videotape of the statement A.N.H. made
to Smedley and Smedley's testimony about that statement did not merely repeat previous trial
testimony. See Dunn v. State, 125 S.W.3d 610, 615 (Tex. App.—Texarkana 2003, no pet.). Even
though A.N.H. was called as a witness, she did not testify. Further, no one else testified at trial about
specific outcry statements A.N.H. had made. The videotape and the accompanying testimony were
not merely cumulative evidence. See id.
            Brown was convicted on three separate indictments, each charging him with the offense of
aggravated sexual assault of a child by causing the child's mouth to contact the sexual organ of the
defendant. There are only three other pieces of evidence tending to show Brown's guilt on any of
the charges. One is his own videotaped statement in which he admitted to only one instance of oral
sex. Two is the testimony of Deputy Reeder, who testified Huggins and Villarrell told him Brown
had sexually abused A.N.H. The third is the testimony of Lieutenant Allen, who testified Brown
admitted to him that A.N.H.'s allegations of forced oral sex "had happened."
            The videotape of A.N.H.'s statement to Smedley is of a magnitude wholly apart from the
evidence just described. In that videotape, A.N.H. relates that Brown forced her to perform oral sex
on him twenty times, not just once. She also gives numerous details concerning how the oral sex
occurred. We are left with more than a grave doubt that the guilty verdict was free from the
substantial influence of the error in admitting this videotape and allowing Smedley to testify.            Further, we are also concerned the improperly admitted evidence may have had a substantial
impact on the jury's deliberations during the punishment phase of the trial. When determining what
punishment to assess, the jury must have considered the compelling videotape testimony that Brown 

had forced A.N.H. to perform oral sex twenty times, far in excess of the one instance Brown
admitted. It is reasonable to conclude that the Smedley testimony and videotape had a substantial
influence on the jury's assessment of punishment. We hold the trial court erred when it allowed
Smedley to testify about the statement made to her by A.N.H. and when it allowed into evidence a
videotape of that statement. We conclude this error had a substantial influence on the proceedings
below. 
            Accordingly, we reverse the judgment and remand to the trial court for a new trial consistent
with this opinion.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          February 23, 2006
Date Decided:             March 29, 2006

Publish