02-10-350 & 351-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND DISTRICT OF
 TEXAS
 FORT WORTH
  
 
 


 

NOS. 02-10-00350-CR
         02-10-00351-CR

 

 


 
 
 JOHNNY PATTERSON
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE
 STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.            
Introduction

          In seven points, Appellant
Johnny Patterson appeals his convictions for one count of improper photography,
one count of indecency with a child, and two counts of aggravated sexual
assault of a child.  We affirm.

II.          
Factual
and Procedural Background

          The State charged Patterson
with one count of indecency with a child and two counts of aggravated sexual
assault of a child in cause number F-2007-1144-B and two counts of improper
photography and three counts of possession of child pornography in cause number
F-2008-0517-B.  On July 19, 2010, the day the jury was impaneled and sworn,
Patterson filed a motion to quash the two counts of improper photography,
arguing that the State omitted an essential element—lack of consent—and that
this violated his due process rights.  The trial court overruled this motion.

          The jury found Patterson
guilty on all counts in cause number F-2007-1144-B and assessed ten years’
imprisonment for the indecency count, life imprisonment for each count of aggravated
sexual assault, and an additional $10,000 fine for each count.[2] 
The jury also found him guilty of one count of improper photography, sentenced
him to two years’ imprisonment, and assessed a $10,000 fine.[3]

III.         
Indictment

          In his third point, Patterson
complains of error in the improper photography indictment, arguing that the
State failed to include the “without consent” element.  However, if a defendant
fails to object to an alleged error in an indictment before the date on which
the trial on the merits commences, he forfeits the right to object to the error
and may not raise the objection on appeal.  See Tex. Code
Crim. Proc. Ann. art. 1.14(b) (West 2005); Sanchez v. State, 138 S.W.3d
324, 330 (Tex. Crim. App. 2004); Ex parte Patterson, 969 S.W.2d 16, 19
(Tex. Crim. App. 1998) (“Now a defect of substance in a charging instrument
does not automatically render a judgment void.”).  Therefore, by failing to file his motion to quash before trial
began on July 19, 2010, Patterson has waived this complaint.  See Sanchez,
138 S.W.3d at 329–30 (recognizing that trial on the merits begins when the jury
is impaneled and sworn); State v. Lohse, 881 S.W.2d 171, 171
(Tex. App.—Houston [1st Dist.] 1994, no pet.) (“A motion to quash filed on the
day of trial is too late.”).  Accordingly, we overrule Patterson’s third point.

IV.     Jury Charge

          In his fourth and fifth
points, Patterson claims that the trial court denied him due process by
instructing the jury on lack of consent when the State failed to include that element
of improper photography in the indictment.

          In contrast to the
indictment, which serves a notice function to the defendant, the purpose of the
jury charge is to “inform the jur[ors] of the applicable law and guide them in
its application to the case.”  Delgado v. State, 235 S.W.3d 244, 249
(Tex. Crim. App. 2007); Dinkins v. State, 894 S.W.2d 330, 339 (Tex.
Crim. App.), cert. denied, 516 U.S. 832 (1995).  Therefore, the trial court
“must ensure that all of the law applicable to the criminal offense that is set
out in the indictment or information is incorporated into the jury charge.”  Delgado,
235 S.W.3d at 249.

          The jury instructions may
not expand the indictment.  Reed v. State, 117 S.W.3d 260, 265 (Tex.
Crim. App. 2003) (holding that the trial court improperly broadened the
indictment by including “recklessly” in the jury instructions when the
indictment alleged “intentionally” and “knowingly”).  Instead, the instructions
must distinctly set forth the law applicable to the case and set out all of the
essential elements of the offense.  Martin v. State, 200 S.W.3d 635, 639
(Tex. Crim. App. 2006).  Indeed, “[a] jury charge is fundamentally defective if
it omits an essential element of the offense or authorizes conviction on a set
of facts that do not constitute an offense.”  Green v. State, 233 S.W.3d
72, 79–80 (Tex. App.—Houston [14th Dist.] 2007, pet. ref’d) (citing Zuckerman
v. State, 591 S.W.2d 495, 496 (Tex. Crim. App. [Panel Op.] 1979)).  In our
review of a jury charge, we first determine whether error occurred; if error
did not occur, our analysis ends.  See Abdnor v. State, 871 S.W.2d 726,
731–32 (Tex. Crim. App. 1994); see also Sakil v. State, 287 S.W.3d 23,
25–26 (Tex. Crim. App. 2009).

          The version of section
21.15 of the penal code in effect on the date of the offense included the
following:

A person commits [improper photography] if the person: 
(1) photographs or by videotape or other electronic means visually records
another:  (A) without the other person’s consent; and (B) with intent
to arouse or gratify the sexual desire of any
person . . . .

Act of June 20, 2003, 78th Leg.,
R.S., ch. 500, § 1, sec. 21.15(b)(1), 2003 Tex. Gen. Laws 1771, 1771 (amended
2007) (current version at Tex. Penal Code Ann. § 21.15(b) (West 2011)). 
Therefore, to properly set out all of the essential elements of improper
photography, the jury charge had to include the “without consent” provision.  See
id.; Green, 233 S.W.3d at 81 (noting that the defective instruction
failed to include the elements required to constitute the offense).  Rather
than broadening the theory set forth in the indictment, the inclusion of the
“without consent” provision properly narrowed the offense because, absent this provision,
the photography could not have been “improper.”  See Act of June 20,
2003, 78th Leg., R.S., ch. 500, § 1, sec. 21.15(b), 2003 Tex. Gen. Laws 1771,
1771 (amended 2007); Curry v. State, 30 S.W.3d 394, 402 (Tex. Crim. App.
2000) (noting that “[r]estraint is not restraint unless it is without consent”
and stating that, because there are no alternatives to “without consent” in a
restraint charge, there would be no need for the State to make this allegation
in a restraint indictment in order to provide notice).  Because we determine
that the jury instruction was not erroneous, see Abdnor, 871 S.W.2d at
731–32, we overrule Patterson’s fourth and fifth points.

V.      Outcry
Witness

          In his second and seventh
points, Patterson complains that the trial court abused its discretion by
allowing the forensic interviewer to be the outcry witness for both counts of
aggravated sexual assault of a child.

A.  Trial Testimony

          1.  J.P.

          J.P. is Patterson’s
daughter, who was fourteen years old at the time of trial.  She testified that
when she was in the third grade, she awoke on her back to find her father lying
on his side next to her in her bed.  She testified that he had his hand
underneath the top waistband of her pants and was touching her
inappropriately.  She testified that he was touching her “private parts”[4]
but that at no point did his finger ever go inside of her private parts.  J.P.
stated that she moved his hand away, got out of bed, and told her mother what
had happened.

          J.P. testified that on
another occasion, she was in the bathtub when Patterson entered the bathroom,
undressed, and got into the bathtub with her.  He asked J.P. to sit with him,
and she did so, facing him.  She testified that she felt his private part touch
hers but that it did not appear that he was trying to penetrate her.  She
recalled that she did not tell her mother about this incident because Patterson
told her not to, and she was scared.

          J.P. testified that in
March 2007, she spoke with a Child Protective Services (CPS) worker about the
sexual abuse and discussed the abuse in great detail with Julianne McKamie,[5]
a forensic interviewer at the Children’s Advocacy Center.  J.P. stated that
other than McKamie, J.P. had not spoken in detail about the abuse with any
other adult, except that she told her mother about the bedroom incident.

          2.  J.P.’s Mother

          Jasmine,[6]
Patterson’s ex-wife and J.P.’s mother, testified that in August 2004, she went
into J.P.’s bedroom to find J.P. lying in bed between the wall and Patterson.  J.P.
told her that she wanted to get up, so Jasmine helped her out of bed and asked
her if anything was wrong.  Jasmine testified as follows:

Q.  What did she say happened?

A.  She told me that Daddy had put his hands under her
panties and was touching her privates.

 

Q.  Did she say how he was touching
her privates?

A.  At first she just told me, you know, that she was
-- you know, that he had touched her.  And so then I asked her, well, you know,
how did he touch you?  And she just kind of kept telling me that, you know, he
was touching her.

 

So, you know, I asked her, I was like, well, did he put
his fingers on you or in you?  And she just, well, he tried to put them in me. 
I asked her, did he put them all the way in you?  No, he didn’t get them all
the way in me but he was trying.

 

          3.  McKamie

          During J.P.’s forensic
interview[7]
with McKamie on March 28, 2007, J.P. told McKamie that on the occasion in her
bed, she woke up that morning to find Patterson lying next to her and touching
her “front private.”[8] 
She said that his hand would touch her skin, that he would stop, and that his
hand would go back underneath her clothes.  She also said that Patterson’s
finger pushed on her front private and went “inside and out.”  She clarified
that his finger “would just go in and out and then it would hurt really bad.”  She
said that “it really hurt” and that later it felt “like something was
stinging.”

          Additionally, J.P. told
McKamie that, on the occasion in the bathtub, Patterson’s “private touched her
private.”  She elaborated that he was trying to put his private part “inside,”
specifically “the middle . . . in between the front and the back,”
the same way that his finger did on the occasion in her bed.  She also said
that his finger did the same thing that it did on the occasion in her bed.  She
stated that Patterson told her not to tell Jasmine about the bathtub incident
but that she told Jasmine about it later.  J.P. said that other than talking to
McKamie and to Jasmine, she had not talked to anyone else about Patterson touching
her inappropriately.

          4.  Lindsey Green

          Green testified that she
was the CPS worker assigned to J.P.’s case.  She arrived unannounced at the
Patterson home and spoke with J.P. for twenty or thirty minutes before
notifying law enforcement of the allegation and setting up a forensic interview
with a member of the advocacy center.  Green explained that CPS found, by a
preponderance of the evidence, “reason to believe” that the allegations were
true, but she clarified that this was not a judicial determination and was not
a reasonable doubt standard.

          5.  Denton County Sheriff’s
Office Investigator Toby Crow

          Investigator Crow testified
that he read the CPS referral when he was assigned to investigate the
allegations against Patterson.  Next, he observed the forensic interview at the
advocacy center, he interviewed Jasmine, he obtained a warrant, and Patterson
was arrested.

B.  Applicable Law

          The
trial court has broad discretion in determining the admissibility of evidence. 
Garcia v. State, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).  We review
the trial court’s decision to admit an outcry witness’s testimony for an abuse of discretion and will not reverse the trial court’s ruling if
it is within the zone of reasonable disagreement.  Id. (recognizing that
a clear abuse of discretion must be established by the record); see Tear v.
State, 74 S.W.3d 555, 558 (Tex. App.—Dallas 2002, pet. ref’d), cert.
denied, 538 U.S. 963 (2003).

          Article 38.072 creates a
statutory exception to the general rule excluding hearsay evidence for a child
abuse victim’s initial outcry statement.  Klein v. State, 191 S.W.3d
766, 779 (Tex. App.—Fort Worth 2006), rev’d on other grounds, 273 S.W.3d
297 (Tex. Crim. App. 2008); see Tex. Code Crim. Proc. Ann. art. 38.072
(West Supp. 2011).  The outcry statute applies only to the child victim’s
statements that, in pertinent part, (1) describe the alleged offense and (2)
were made to the first person, eighteen years of age or older, other than the
defendant, to whom the child made a statement about the offense.  Tex. Code
Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A), (3).  A statement about
the offense is a statement that “in some discernible manner describes the
alleged offense” and gives “more than a general allusion of sexual abuse.”  Garcia,
792 S.W.2d at 91.

          The outcry exception is
only available for one witness “unless the child revealed discrete occurrences
of the same offense, or revealed different
offenses, to separate adults.”  Reynolds v. State,
227 S.W.3d 355, 369 (Tex. App.—Texarkana 2007, no pet.); see Quinones
v. State, Nos. 13-10-00140-CR, 13-10-00141-CR, 13-10-00142-CR, 2011
WL 3841586, at *9 (Tex. App.—Corpus Christi Aug. 25, 2011, no pet.) (mem. op.,
not designated for publication) (“[S]o long as separate outcry witnesses
testify about separate offenses, the testimony of each is admissible.”) (citing
Broderick v. State, 35 S.W.3d 67, 73–74 (Tex. App.—Texarkana 2000, pet.
ref’d) (“[A]n outcry witness is not
person-specific, but event-specific.”)).  For instance, “[i]f the child victim
first described one type of abuse to one outcry witness, and first described a
different type of abuse to a second outcry witness, the second witness could
testify about the different instance of abuse.”  Tear, 74 S.W.3d at 559.

          However, the outcry
statement must actually describe different events and “not simply [be] a
repetition of the same event as related by the victim to different
individuals.”  Broderick, 35 S.W.3d at 73.  Indeed, “the proper outcry
witness is not to be determined by comparing the statements the child gave to
different individuals and then deciding which person received the most detailed
statement about the offense.”  Brown v. State, 189 S.W.3d 382, 386 (Tex.
App.—Texarkana 2006, pet. ref’d).

          Further, the child victim’s
statement to the outcry witness must describe the alleged offense, not just any
offense.  Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A); Brown,
189 S.W.3d at 386 (reviewing victim’s description of the offense and noting
that it tracked the language of the statute defining the offense for which
appellant was convicted); see Pierce v. State, No. 10-09-00320-CR, 2010
WL 2683052, at *1–2 (Tex. App.—Waco July 7, 2010, no pet.) (mem. op., not
designated for publication) (holding that trial court did not abuse its
discretion by permitting forensic interviewer’s outcry testimony that appellant
had inserted his tongue into victim’s vagina when other witness’s testimony
that appellant had touched victim’s vagina did not describe charged
offense—appellant penetrating victim’s sex organ with his tongue—in any
discernible way); Sledge v. State, No. 03-03-00092-CR, 2004 WL 438958,
at *1–3 (Tex. App.—Austin Mar. 11, 2004, no pet.) (mem. op., not designated for
publication) (holding that when both allegations arose out of the same act,
allowing testimony of both outcry witnesses was not an abuse of discretion when
one witness’s testimony went to the indecency with a child allegation and other
witness’s testimony went to the penetration element of the aggravated sexual
assault allegation); Turner v. State, 924 S.W.2d 180, 183 (Tex.
App.—Eastland 1996, pet. ref’d) (holding that officer was the appropriate
outcry witness because, even though victim told counselor that appellant
penetrated her vagina with his finger, she told officer, not counselor, that
appellant penetrated her with his penis, as alleged in the indictment).

C.  Analysis

          1.  Count One—Penetration

          In his second point,
Patterson contends that Jasmine was the proper outcry witness for count one.

                   a.  Proper
Outcry Witness

          First, Patterson argues
that Jasmine was the first person to whom J.P. made a statement that was more
than a general allusion of sexual abuse, even though J.P. did not tell her that
Patterson penetrated her sexual organ.

                             i. 
Error

          Because Jasmine testified
as an outcry witness,[9]
the question is whether McKamie was also a proper outcry witness.  See
Fuller v. State, No. 06-00-00032-CR, 2001 WL 691249, at *1–2 (Tex.
App.—Texarkana June 21, 2001, pet. ref’d) (not designated for publication)
(permitting mother to testify as the first person to whom the victim related
the offense in a discernible manner—by stating that appellant pushed victim on
the bed and laid on top of her—and also permitting detective to testify about
the particular act—that appellant fondled her breasts—as alleged in the
indictment) (citing Broderick, 35 S.W.3d at 73–74, and Turner,
924 S.W.2d at 183).  Our analysis considers whether J.P.’s statement to McKamie
(1) described the alleged offense in a discernible manner, see Tex. Code
Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A); Garcia, 792 S.W.2d at 91; Brown,
189 S.W.3d at 386, and (2) described different events such that the statement
was “not simply a repetition of the same event as related by the victim to
different individuals.”  See Broderick, 35 S.W.3d at 73.

          A person commits aggravated
sexual assault of a child by penetration when he, in pertinent part,
intentionally or knowingly causes the penetration of a child’s sexual organ by
any means.  Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West Supp. 2011).  As
Patterson implicitly concedes, J.P.’s statement to McKamie sufficiently
described this offense as alleged in count one of the indictment when she
explained to McKamie that she awoke that morning in her bed to find Patterson’s
finger pushing on her front private part and going “inside and out.”  See Tex.
Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A), (3); Garcia, 792 S.W.2d
at 91; Sledge, 2004 WL 438958, at *3.  Because J.P. described the
alleged offense to McKamie in a discernible manner, McKamie was a proper outcry
witness as long as the published portion of J.P.’s statement to McKamie did not
repeat the same events about which Jasmine testified.  See Garcia, 792
S.W.2d at 91; Brown, 189 S.W.3d at 386; Broderick, 35 S.W.3d at
73 (holding that officer was not a proper outcry witness for the “touching” allegation
because victim had previously told mother the same story in a discernible
manner but that officer was the proper outcry witness for the allegation that
appellant licked victim’s genitals because officer was the first person to whom
victim told that portion of the story).

          McKamie was the first
person to whom J.P. described the act of penetration in a discernible manner
when J.P. said that Patterson’s finger went “in and out” of her front private
part.  See Garcia, 792 S.W.2d at 91.  While J.P. had previously told Jasmine
that Patterson did not get his fingers “all the way in,” it was within the zone
of reasonable disagreement for the trial court to treat this ambiguous
statement as a denial of penetration and, thus, not an outcry statement.  See
Divine v. State, 122 S.W.3d 414, 419 (Tex. App.—Texarkana 2003, pet.
ref’d) (“[T]he child did not make an outcry about penetration to the
grandmother, but did make such an outcry to the interviewer.  The fact the
child denied penetration had occurred in her statement to the grandmother does
not make the later outcry inadmissible, or change its nature.”); Tear,
74 S.W.3d at 558.  Therefore, it was not an abuse of discretion for the trial
court to permit McKamie to be the outcry witness for the specific act of
penetration.  See Tear, 74 S.W.3d at 558; Fuller, 2001 WL 691249,
at *1–2 (holding that trial court did not abuse its discretion by permitting
detective to testify in “a limited fashion” about only the particular act not covered
by mother’s testimony).

          However, when J.P. told
McKamie that she woke up to find Patterson lying next to her, putting his hand
underneath her clothing, and touching the skin on the outer portion of her
front private part, J.P. had already made similar statements regarding this touching
to Jasmine.  Therefore, these statements to McKamie constituted “a repetition
of the same event as related by the victim to different individuals.”  See
Broderick, 35 S.W.3d at 73.

          Instead of comparing these
statements and deciding which person received the most detailed statement about
the offense, see Brown, 189 S.W.3d at 386, we hold that Jasmine, not
McKamie, was the proper outcry witness for these statements that, for the first
time, described the touching in a discernible manner.  See Garcia, 792
S.W.2d at 91.  Therefore, the trial court abused its discretion by allowing the
State to play a longer segment of the video than necessary—J.P.’s entire
statement to McKamie regarding the August 1 incident—and not limiting the
published portion of the video regarding this count to the segment relating
only to penetration.  See Tear, 74 S.W.3d at 558; Broderick, 35
S.W.3d at 74 (holding that trial court abused its discretion by not limiting
second outcry witness’s testimony to only the additional act about which victim
told him).

                             ii.  Harm

          Having found error, we must
conduct a harm analysis to determine whether the error calls for reversal. 
Tex. R. App. P. 44.2.  The admission of inadmissible hearsay constitutes
nonconstitutional error, Broderick, 35 S.W.3d at 74, and it will be
considered harmless if we, on examination of the entire record, are reasonably
assured that the error did not influence the jury verdict or had no more than a
slight effect, such as when “substantially the same evidence” is admitted
elsewhere without objection.  Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998); Mayes v. State, 816 S.W.2d 79, 88 (Tex. Crim.
App. 1991).

          Here, J.P. testified
without objection about the alleged touching.  This evidence was substantially
similar to the portion of McKamie’s interview with J.P. that was improperly
admitted.  See Mayes, 816 S.W.2d at 88; Fuller, 2001 WL
691249, at *3 (holding that error in permitting two witnesses to testify to
some degree about the same hearsay statement was harmless because the victim
testified about the same events in detail); Broderick, 35 S.W.3d at 74
(holding that the trial court’s error in admitting improper outcry witness
testimony was harmless in part because the victim testified at trial about the
same details).  Therefore, based on the record as a whole, we are reasonably
assured that allowing the improper outcry testimony did not influence the jury
verdict or had but a slight effect, and we find this error to be harmless.  See
Johnson, 967 S.W.2d at 417.  Accordingly, we overrule this portion of
Patterson’s second point.

                   b. 
Notice

          Next, Patterson argues that
the State failed to give sufficient notice of its intent to call McKamie as the
outcry witness for count one because it had designated Jasmine, not McKamie, as
the outcry witness for that count.[10]

                             i. 
Error 

          Article 38.072 requires
that the party intending to offer the outcry statement must timely provide the
adverse party with notice of its intent to offer the statement, the name of the
witness through whom it intends to offer the statement, and a written summary
of the statement.  Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1); Long,
800 S.W.2d at 547 (recognizing that these provisions are mandatory).

          The State’s timely motion
to admit J.P.’s hearsay statements specified that it would seek to admit
statements “made by [J.P.] to the witnesses [Jasmine] Patterson (Count I) and
Julie [McKamie] (Count II & III).”  Also, the State attached a written
summary detailing J.P.’s statement to McKamie, which included the statements
that we set out above describing penetration.  Therefore, the State complied
with the statute insofar as the State notified Patterson of its intent to offer
J.P.’s statement to McKamie and provided Patterson with a written summary of
the statement.  See Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1). 
However, a “statement” under article 38.072 is one that describes the alleged
offense, not just any offense, and an outcry witness is offense-specific.  See
id. § 2(a)(1)(A); Broderick, 35 S.W.3d at 73.  Therefore, we
conclude that because the State indicated that Jasmine, rather than McKamie,
would be the witness through whom it intended to offer J.P.’s statement
regarding count one, the State did not strictly comply with article 38.072’s
requirement to identify “the name of the witness through whom it intends to
offer the statement.”  See Tex. Code Crim. Proc. Ann. art. 38.072, §
2(b)(1)(B).

                             ii. 
Harm

          Because the State failed to
comply with this mandatory notice requirement, we must again conduct a harm
analysis pursuant to rule 44.2(b) and disregard the error if it did not affect
Patterson’s substantial rights.  See Tex. R. App. P. 44.2(b); Dorado
v. State, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992); Wheeler v. State,
79 S.W.3d 78, 84 (Tex. App.—Beaumont 2002, no pet.).  The purpose of article
38.072’s notice requirement is to prevent a defendant from being surprised at
trial by the outcry testimony.  Gabriel v. State, 973 S.W.2d 715, 719
(Tex. App.—Waco 1998, no pet.).  Therefore, in deciding if a failure to comply
with this requirement is harmless error, we review the record to determine
whether Patterson was actually surprised by the outcry evidence and was
prejudiced by a lack of notice.  See Zarco v. State, 210 S.W.3d 816, 832
(Tex. App.—Houston [14th Dist.] 2006, no pet.); Upton v. State, 894 S.W.2d 426, 429 (Tex.
App.—Amarillo 1995, pet. ref’d).

          Patterson
did not argue actual surprise either at trial or in his brief, nor does the
record reflect that he was surprised by the outcry witness evidence.  See Padilla v. State, 278 S.W.3d 98, 107 (Tex. App.—Texarkana 2009,
pet. ref’d) (stating that appellant failed to identify any harm and that, even
if he had, it would not have been supported by the record); Zarco, 210
S.W.3d at 832–33 (holding
that appellant was not harmed because he did not argue actual surprise at trial
or on appeal and because he could not reasonably have done so based on the
record).  Instead, the record shows that Patterson received timely notice of the statement itself; the
State only failed to specify that it would offer this statement to prove count
one.  See Zarco, 210 S.W.3d at 832–33 (“In actuality, appellant did
receive sufficient notice of the statement itself; only the identity of the
witness information was tardy.”).  Therefore, Patterson had actual notice of
the State’s intent to use the outcry testimony and was not harmed by the notice
error.  See Berotte v. State, 992 S.W.2d 13, 19 (Tex. App.—Houston [1st
Dist.] 1997, pet. ref’d) (“[A]ny error was harmless because appellant had
actual notice of the State’s intent to use the outcry
testimony.”); Gottlich v. State, 822 S.W.2d 734, 737 (Tex. App.—Fort
Worth 1992, pet. ref’d) (“[W]e hold that [appellant] had adequate notice of the
actual content of the outcry statement and could not have suffered any surprise
or harm from the outcry testimony.”), overruled on other grounds by Curry v.
State, 861 S.W.2d 479 (Tex. App.—Fort Worth  1993, pet. ref’d). 
Accordingly, we overrule Patterson’s second point.

          2.  Count Two—Contact

          In his seventh point,
Patterson argues that Green, rather than McKamie, was the appropriate outcry
witness for count two.  Specifically, Patterson claims that it is clear that
J.P. described aggravated sexual assault of a child by contact to Green because
Green spoke with J.P. for twenty minutes, Green had reason to believe that the
allegations were true, and J.P.’s statement to Green led to Patterson’s arrest.

          A person commits aggravated
sexual assault of a child by contact when he, in pertinent part, intentionally
or knowingly causes his sexual organ to contact the sexual organ of a child. 
Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii) (West Supp. 2011).  We may only
find an abuse of discretion if it is established by the record, see Garcia,
792 S.W.2d at 92, and the record reflects that J.P. told McKamie that Patterson
caused his sexual organ to contact her sexual organ during the bathtub
incident.  Therefore, J.P. described the alleged offense in a discernible
manner such that McKamie was the appropriate outcry witness as long as she was
the first adult to whom J.P. made this statement.  See Tex. Code Crim.
Proc. Ann. art. 38.072, § 2(a)(1)(A), (3); Garcia, 792 S.W.2d at 91. 
The record is devoid of any indication that J.P. made a statement to Green that
related to this allegation.  Because we cannot determine from the record what
J.P. said to Green, we conclude that the trial court did not abuse its
discretion by ruling, on the evidence before it, that McKamie was the proper
outcry witness for count two.  See Garcia, 792 S.W.2d at 91–92
(holding that, in the absence of evidence in the record regarding what victim
told “witness A,” trial court did not abuse its discretion by ruling that
“witness B” was the proper outcry witness).  Accordingly, we overrule
Patterson’s seventh point.

VI.     Sufficiency

          In his first and sixth
points, Patterson complains that the evidence at trial was insufficient to
support his convictions on one count of aggravated sexual assault of a child
and on improper photography.

A.  Standard of Review

          In our due-process review
of the sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Isassi v. State, 330 S.W.3d 633, 638 (Tex.
Crim. App. 2010).

          This standard gives full
play to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi,
330 S.W.3d at 638.  The trier of fact is the sole judge of the weight and
credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(West 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008),
cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing an
evidentiary sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the
factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).  Instead, we Adetermine whether the necessary inferences are reasonable
based upon the combined and cumulative force of all the evidence when viewed in
the light most favorable to the verdict.@  Hooper v. State, 214 S.W.3d
9, 16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved
any conflicting inferences in favor of the verdict and defer to that
resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Isassi,
330 S.W.3d at 638.

B.  Count One—Penetration

          In his first point,
Patterson argues that the evidence of penetration was insufficient because J.P.’s
statement to McKamie did not prove penetration beyond a reasonable doubt.

          1.  Additional Trial
Testimony

          Paula Fornara, a sexual
assault nurse examiner, testified that the hymen is “a collar around the
opening to the vagina.”  She further testified that before a female goes
through puberty, the hymen is very sensitive and that if someone tried to touch
or penetrate it, it would be excruciatingly painful.[11]

          2.  Analysis

          “[A] child victim’s outcry
statement alone can be sufficient to support a conviction for aggravated sexual
assault.”  Tear,
74 S.W.3d at 560.  While certainly not uncontroverted, J.P.’s statement to McKamie
that Patterson’s finger pushed on her private part, went “inside and out,” and
caused her pain supports the jury’s finding that Patterson intentionally caused
his finger to penetrate J.P.’s sexual organ.  See Tex. Penal Code Ann. §
22.021(a)(1)(B)(i); Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim.
App. 1992) (holding that evidence was sufficient to prove penetration when
victim testified that appellant touched the outside of her vagina and that she felt
pain and discomfort when he pressed on it).  Furthermore, the pain that J.P.
described as hurting “really bad” and later feeling “like something was
stinging” is consistent with the excruciating pain that Fornara testified is
typical if someone were to touch or penetrate the hymen surrounding the opening
of the vagina of a prepubescent female, which J.P. was at the time.  Based on
J.P.’s outcry alone, there was sufficient evidence to support the jury’s
finding of guilt on count one of digital penetration.  See Tear, 74
S.W.3d at 561.

          It was the jury’s
responsibility to draw inferences from J.P.’s statement to Jasmine that
Patterson tried to get his fingers inside of her but did not get them in all of
the way.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi,
330 S.W.3d at 638.  And we do not substitute our judgment for that of the
jury, see Williams, 235 S.W.3d at 750, but instead presume that the jury
resolved any conflicting inferences in favor of a finding of digital penetration
and defer to that resolution.  See Jackson, 443 U.S. at 326, 99 S. Ct.
at 2793; Isassi, 330 S.W.3d at 638.  In doing so, we conclude that it
was reasonable for the jury to infer that, based on the cumulative force of J.P.’s
statements to McKamie, J.P.’s ambiguous statement to Jasmine supported the
jury’s finding that Patterson’s finger penetrated J.P.’s sexual organ.  See
Steadman v. State, 280 S.W.3d 242, 247–48 (Tex. Crim. App. 2009) (“[T]actile
contact beneath the fold of complainant[’]s external
genitalia amounts to penetration within the meaning of the Aggravated Sexual
Assault statute, since vaginal penetration is not required, but only penetration
of the ‘female sexual organ.’” (quoting Vernon, 841 S.W.2d at 409–10)); Hooper,
214 S.W.3d at 16–17.

          It was also the jury’s
responsibility to weigh this evidence with J.P.’s conflicting testimony that
Patterson’s finger did not penetrate her at any point.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.  Again,
we may not re-evaluate the weight and credibility of this evidence and
substitute our judgment for that of the jury.  See Williams, 235 S.W.3d
at 750.  We only conclude that it is reasonable, based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict, for the jurors, who were able to observe J.P.’s demeanor both on
the stand and in her forensic interview, to have given little weight to or
discredited J.P.’s recantation testimony that occurred almost six years after
the August 2004 incident.  See Hooper, 214 S.W.3d at 16–17; Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (“The jury observed
the complainant’s demeanor and was entitled not only to reconcile any such
conflicts [in her testimony], but even to disbelieve her recantation.”).  We
defer to that resolution and conclude that a rational trier of fact could have
found the element of penetration beyond a reasonable doubt.  See Jackson,
443 U.S. at 319, 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638. 
Accordingly, we overrule Patterson’s first point.

C.  Count Five—Improper Photography

          In his sixth point,
Patterson argues that the evidence at trial was insufficient to prove improper
photography.

          1.  Evidence at Trial

          Jasmine testified that she
believed pictures had been taken of her while she slept one night because she
awoke to flashes.  She later found on Patterson’s computer many nude
photographs of herself, four of which the trial court admitted as State’s
exhibits two through five and the State published to the jury.  Jasmine
testified that she does not like being photographed and that she did not
consent to have nude photographs of her taken.  She believed that Patterson
took the photographs because nobody else had access to their master bathroom or
bedroom where the photographs were taken and because she found the photographs
on Patterson’s computer, to which nobody else had access.  She also stated that
she believed she was the individual depicted in the photographs because she
recognized her body, the clothes next to her, and her bed, but she admitted on
cross-examination that the individual could be anybody.

          2.  Analysis

          In assessing the
sufficiency of the evidence of improper photography, we consider whether any
rational trier of fact could have found the essential elements of this offense—specifically,
the alleged actor, the prohibited conduct, the victim, the requisite intent,
and the lack of consent—beyond a reasonable doubt.  See Act of June 20,
2003, 78th Leg., R.S., ch. 500, § 1, sec. 21.15(b), 2003 Tex. Gen. Laws 1771,
1771 (amended 2007); Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi,
330 S.W.3d at 638.

          Jasmine’s testimony that
she believed that Patterson was the one who took the nude photographs because
nobody else had access to their bedroom, their bathroom, or Patterson’s
computer supports the jury’s finding that Patterson was the actor who engaged
in the prohibited conduct of taking photographs.  See Act of June 20,
2003, 78th Leg., R.S., ch. 500, § 1, sec. 21.15(b), 2003 Tex. Gen. Laws 1771,
1771 (amended 2007); Cooper v. State, 326 S.W.3d 757, 762–63 (Tex.
App.—Texarkana 2011, pet. granted) (concluding that the evidence was
insufficient to prove that appellant recorded the videos because there was
evidence that, rather than appellant having sole possession of the location
from which the videos were taken, several other people had access to the
location over a period of time).

          Moreover, her testimony
that she never gave Patterson permission to take those photographs because she
does not like being photographed and that he took them while she was asleep supports
the jury’s finding of the “without consent” element.  See Act of June
20, 2003, 78th Leg., R.S., ch. 500, § 1, sec. 21.15(b), 2003 Tex. Gen. Laws
1771, 1771 (amended 2007).  Further, the content of the photographs supports
the reasonable inference that Patterson took the photographs with the intent to
arouse or gratify his or another person’s sexual desires because the depicted
individual was naked.  See id.  Additionally, Jasmine’s testimony that
she was the woman depicted in the photographs supports the jury’s finding of
this final element of improper photography.  While she also conceded on
cross-examination that she supposed the person could be anybody, the jurors are
the sole judge of the weight and credibility of the evidence, see Brown,
270 S.W.3d at 568, and we may not re-evaluate this and substitute our judgment
for theirs.  See Williams, 235 S.W.3d at 750.  Instead, we presume that
the jurors resolved this conflicting testimony in favor of the verdict, and we
defer to their resolution.  See Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Isassi, 330 S.W.3d at 638.

          Therefore, viewing the
evidence in the light most favorable to the verdict, we conclude that a
rational jury could have found the above elements of improper photography
beyond a reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Isassi, 330 S.W.3d at 638.  Accordingly, we overrule Patterson’s
sixth point.

VII.       
Conclusion

          Having overruled each of
Patterson’s points, we affirm the trial court’s judgments.

 

 

                                                                             PER
CURIAM

 

PANEL:  MCCOY, WALKER, and
MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 19, 2012

 









[1]See
Tex. R. App. P. 47.4.





[2]Count
one (aggravated sexual assault of a child by penetration) alleged, in pertinent
part, that Patterson intentionally or knowingly caused the penetration of
J.P.’s sexual organ by his finger on or about August 1, 2004.  Count two
(aggravated sexual assault of a child by contact) alleged, in pertinent part,
that Patterson intentionally or knowingly caused his sexual organ to contact
J.P.’s sexual organ on or about July 20, 2005.





[3]This
count alleged, in pertinent part, that improper photography occurred on or
about October 10, 2006.





[4]She
clarified that by “private parts,” she meant the “front part that you pee
from.”





[5]By
the date of trial, Julianne Khan had changed her last name to McKamie.





[6]J.P.’s
mother’s initials are also J.P., so for clarity, we will refer to her using the
fictitious name “Jasmine.”





[7]The
State offered into evidence a segment of the DVD recording of J.P.’s forensic
interview with McKamie.  Patterson objected to admission of the DVD, arguing
that J.P. made her outcry statement to her mother rather than to McKamie and
that, therefore, the DVD was hearsay.  The trial court admitted, and the State
published before the jury, a thirteen-minute segment of the DVD.





[8]J.P.
identified the “front private” as the part that a person uses to “go pee.”





[9]Patterson
does not complain that Jasmine was not a proper outcry witness but, rather,
contends that she was the only proper outcry witness.  Therefore, we do
not address the trial court’s decision to let Jasmine testify as an outcry
witness.  See Tex. R. App. P. 47.1.





[10]Patterson’s
hearsay objection at trial preserved his notice complaint.  See Long v.
State, 800 S.W.2d 545, 547–48 (Tex. Crim. App. 1990) (holding that a
defendant’s hearsay objection is sufficient to preserve error for any failure
to comply with article 38.072).





[11]The
State recalled Jasmine, who testified that J.P. began puberty in the summer of
2008 at the end of her sixth-grade year.