

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00083-CR

_____

WILLIAM ALLEN COOPER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd Judicial District Court
Red River County, Texas
Trial Court No. CR01517

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

In the 50s, before the advent of video cameras and cell phone videos, a popular song advised us that standing on the corner and watching females pass by was acceptable conduct and that "you can't go to jail for what you're thinking."[1]  Watching may still be acceptable conduct, but recording that parade may violate the law in Texas today.

William Allen Cooper was convicted by a jury of an offense entitled *Improper Photography or Visual Recording*.  The offense is a state jail felony, and on two counts, he was sentenced to the maximum punishment:  two years in a state jail facility on each prosecution and a $10,000.00 fine.  *See* TEX. PENAL CODE ANN. § 21.15 (Vernon Supp. 2010).

I.    **Issues on Appeal**

Cooper raises several issues on appeal, including a *Batson*[2] claim, issues about the unsupported assessment of costs against him, and issues concerning the harm caused by improperly admitted evidence and an improper opening statement by the prosecutor—that attempted to convince the jury to convict based not on the evidence, but on evidence that it could not see until punishment (when the rest of the story would be revealed).  We need not address those issues, as we reverse both convictions based on insufficiency of the evidence.

---

[1]"Standing on the Corner" from the show "The Most Happy Fella" (1956) (Frank Loesser) *Recorded by* The Four Lads, Dean Martin, and The King Brothers.

[2]*Batson v. Kentucky*, 476 U.S. 79 (1986).

As applied to this prosecution, the statute criminalizes the act of photographing/recording a visual image of another at a location not a bathroom or private dressing room without that person's consent, and with intent to arouse or gratify the sexual desire of any person.[3]

## II. Facts

Cooper was convicted for making video recordings (shot through a window) of females walking down the sidewalk, or down the street, in front of either his home or business. The

---

[3]Section 21.15.    Improper Photography or Visual Recording

    (a)      In this section, "promote" has the meaning assigned by Section 43.21.

    (b)      A person commits an offense if the person:

        (1)      photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of another at a location that is not a bathroom or private dressing room:
                (A)      without the other person's consent; and
                (B)      with intent to arouse or gratify the sexual desire of any person;
        (2)      photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of another at a location that is a bathroom or private dressing room:
                (A)      without the other person's consent; and
                (B)      with intent to:
                        (i)      invade the privacy of the other person; or
                        (ii)      arouse or gratify the sexual desire of any person; or
        (3)      knowing the character and content of the photograph, recording, broadcast, or transmission, promotes a photograph, recording, broadcast, or transmission described by Subdivision (1) or (2).

    (c)      An offense under this section is a state jail felony.

    (d)      If conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section or the other law.

    (e)      For purposes of Subsection (b)(2), a sign or signs posted indicating that the person is being photographed or that a visual image of the person is being recorded, broadcast, or transmitted is not sufficient to establish the person's consent under that subdivision.

3

subjects were fully clad and were not in a private area. We have duplicates made by the State of the only two tapes involved, containing several hours of video, which the State edited into a short "best of" video for the jury's perusal. All of these were introduced into evidence and made available to the jury. The videographer used the zoom function on the camera at various times to obtain close-ups of specific parts of female anatomy. Those close-ups are what the State relies upon to prove intent—the statute requires the video to have been made with the intent to arouse or gratify the sexual desire of a person. The State argues that this choice of subject matter would allow a jury to find the requisite intent, and counsel does not argue to the contrary.

## III. Sufficiency of the Evidence

The critical issue in this review is whether the evidence is sufficient to allow a rational jury to decide that the State had proven, beyond a reasonable doubt, that Cooper was the videographer. In evaluating Cooper's legal sufficiency challenge, we apply the *Jackson* standard as explained in *Brooks*.

> The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In the *Brooks* plurality opinion, the Texas Court of Criminal Appeals found "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis*[4] factual-sufficiency standard, and these two standards have become indistinguishable." *Brooks v.*

---

[4]*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

4

*State*, No. PD-0210-09, 2010 WL 3894613, at \*8 (Tex. Crim. App. Oct. 6, 2010) (4-1-4 decision). Further, a proper application of the *Jackson v. Virginia* legal sufficiency standard is as exacting a standard as any factual sufficiency standard. *See id.* at \*11. In a concurring opinion, Judge Cochran pointed out that the United States Supreme Court has rejected a legal sufficiency test that requires a finding that "no evidence" supports the verdict because it affords inadequate protection against potential misapplication of the "reasonable doubt" standard in criminal cases. *Id.* at \*16 (Cochran, J., concurring). Rather than meeting a mere "no evidence" test, legal sufficiency is judged not by the quantity of evidence, but by the quality of the evidence and the level of certainty it engenders in the fact-finder's mind. *Id.* at \*17.

We thus examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). If we determine that the evidence is legally insufficient to sustain a conviction, the proper remedy is to reverse the case and order acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41–42 (1982); *Taylor v. State*, 626 S.W.2d 543, 545 (Tex. App.—Texarkana 1981, pet. ref'd).

We measure the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case."[5] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

---

[5] *Malik* controls "even in the absence of alleged jury charge error." *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001).

The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

## A. Evidence of Cooper as the Recorder

Certain matters are undisputed. The videos were taken from inside Cooper's house and from inside his business (a detail shop). They were taken with a camera that was found near his residence and that had previously been in his residence. The tapes themselves were found inside his house. The evidence also shows that Cooper did not have sole access to either his home or business. Cooper had teenage children who visited the house, Maria Gooden (Cooper's ex-girlfriend) had an eighteen-year-old son, and Cooper had employees at the business. There is no testimony from any source that any individual saw Cooper using the video camera either while taking these videos, or at any other time.

The State relies on the location of the filming, the testimony of a police officer, Brandon Harbison, and the testimony of Cooper's ex-girlfriend as evidence that Cooper filmed the video.

The police officer testified the ex-girlfriend (Gooden) had told him that Cooper made the videos because she had seen him on the recording. The officer did not testify that Cooper made the videos—only that he had been told by Gooden that Cooper had done so.

> Q. Do you know whether or not Mr. Cooper was the one videotaping these girls, the one who was operating the camera?

A.      I was told so by Maria Gooden.[6]

The language used by the officer in his nonresponsive answer to the question does not provide

direct testimony that Cooper made the video.   It provides evidence that the ex-girlfriend told him

that Cooper made the video.   Even if a portion of this evidence was admitted before the jury, since

the officer was merely quoting Gooden, the basis of the evidence must stand on the testimony of

Gooden.

On redirect examination, the officer testified that "he was in the video -- one of the videos,

and I don't remember which tape it was on, for a very short time."

Gooden testified that after she found the camera in the house, she thought Cooper was

operating the camera, because she had seen images of Cooper on it when she viewed the first tape.

Objections were raised to her testimony, along with impassioned discussion before the judge (and

out of the hearing of the jury) by counsel, who stated that he had watched the DVD copies of the

tapes (which the State then reaffirmed were true and accurate copies of all of the tapes) and had

seen nothing with Cooper appearing.

After the discussion at the bench, the trial court ruled as follows:

THE COURT:   Ladies and gentlemen, there was a question about a clip, and I
have sustained the objection.   The tape will speak for itself.   And so you shall
disregard any reference to the tape.

Accordingly, Gooden's prior testimony about what she had seen on the tape was removed from the

---

[6]Counsel objected to the evidence as hearsay.   His objection was sustained, but the court declined to instruct the jury
to disregard the evidence.

jury's consideration.

Despite this directive from the trial judge, the prosecutor attempted to obtain the same testimony again:

Q.      At one point I believe you testified you thought you saw him or you could identify --

[Defense counsel]:   Judge, we're going to -- we'll re-urge our motion -- objection. I'm sorry.   I mean this -- I'm not sure this isn't the same question just rephrased.

. . . .

THE COURT:  Well, let's get to playing the tapes so the tapes will speak for themselves.   We don't need the commentary as to what they are or whatever.

As a result of these proceedings, none of the testimony of Gooden about what she observed on the video was placed before the jury during that exchange.   The court quite reasonably concluded that the jury could observe the videos and reach its own conclusions without her extraneous explanation of what she believed she had seen on one of them—at some undefined and unspecified point in the recording.

Later, however, the State attempted to circumvent the trial court's ruling, and to some degree succeeded.

The prosecutor asked Gooden:

Q.      Do you know who was making these videotapes that you found?

A.      William Cooper.

Q.      And how do you know that?

8

A. Because there's a clip in one of them that he's wearing his shirt that I used to wash, and I know his build and body and his favorite chair.

Then, on cross-examination, the following transpired:

Q. Now, you say he's in one of these videos?

A. Yes.

Q. So if he's in one, who took that picture?

A. He was holding the camera. You could see him holding the camera at this angle. Like that.

Q. How do you know that?

A. You can see it. It's a quick clip. You can rewind it and watch it again.

## IV. Analysis of Sufficiency of the Evidence that Cooper Recorded the Videos

### A. The Video Recordings

The Texas Court of Criminal Appeals has very recently explained the test for legal sufficiency of the evidence in *Brooks*. The sole hypothetical provided by the Texas Court of Criminal Appeals for our elucidation is one that shows the court intends for review to be not just of the quantity ("no evidence standard"), but the quality of the evidence presented. That hypothetical is easily applicable to the situation before this Court in this case.

> The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. <u>It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But, based on *all* the evidence, the jury's finding of guilt is not a rational finding.</u>

*Brooks*, 2010 WL 3894613, at \*11 (emphasis added). Under a pure "no evidence" analysis, there is obviously some evidence in the hypothetical to support conviction of robber A.[7] The clerk testified A did it. In Judge Cochran's concurrence joined by Judge Womack, it is explained that legally sufficient evidence is of such sufficient strength, character, and credibility to engender certainty beyond a reasonable doubt in the reasonable fact-finder's mind—evidence lacking that strength is legally insufficient. Under this analysis, the above example is legally insufficient.[8]

Just as in the example in *Brooks*, under a "no evidence" or "quantity" analysis, there is some evidence to support conviction. Gooden testified that she saw Cooper in the videotape. Harbison testified, albeit very briefly and in some conflict with his own prior testimony, that he had seen Cooper in a very short clip in the videotape. The State has not attempted to identify where such evidence may be found on the videos.

---

[7]As mentioned earlier, Judge Cochran, in a concurring opinion, explained that the United States Supreme Court had rejected a legal sufficiency test that requires a finding that "no evidence" supports the verdict. *Brooks*, 2010 WL 3894613, at \*16 (Cochran, J., concurring).

[8]Further supporting this reasoning is the source of the hypothetical: a dissent in *Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000) (which two members of this plurality had joined). In that opinion, Presiding Judge McCormick explained,

> A properly applied *Jackson v. Virginia* standard, therefore, is much more exacting than *Clewis* claims. *Jackson v. Virginia* requires the reviewing court to consider *all* the evidence in the "light most favorable to the verdict," and then it requires the reviewing court to decide whether the jury's finding of guilt is "rational." A properly applied *Jackson v. Virginia* standard is essentially as exacting a standard as a "factual sufficiency" standard which means that when the evidence meets the *Jackson v. Virginia* standard, it can never be "factually insufficient" and when the evidence is "factually insufficient," it will always be insufficient under the *Jackson v. Virginia* standard.

*Johnson v. State*, 23 S.W.3d 1, 15–16 (Tex. Crim. App. 2000).

This Court has the videos.  We have reviewed them carefully.  At various points, the inside of the residence or business is visible and identifiable.  There is a little red chair as described by Gooden—but unoccupied.   The video quality is very poor—there are four thick lines of static running across the screen for their entirety.  The focus of the camera is on females walking up and down a public street.  The zoom feature is used regularly to focus on particular portions of their anatomy.

What does not appear in any of these videos is the critical fact.   There is no recording of any portion of the videographer taking the pictures of the two complainants—or of any individual taking any other videos of other females through the windows.   At no point does the body of the individual taking the pictures become visible, in any part.   There is no picture of Cooper, or of any shirt that could have been recognized by Gooden.

In summary, there is no testimony that anyone saw Cooper filming the videos, but there is testimony that they saw Cooper on the videotape.  After a painstaking review of all of the evidence, including the videos themselves, it is clear that the video recordings do not contain any pictures of Cooper—or anyone else—that could reveal who was operating the camera when making the recordings that are the subject of this prosecution.   It is, therefore, under the explanations made in *Brooks* of sufficiency review and the hypothetical provided, and applying the standard of *Jackson* as explained therein, not rational for a jury to conclude that Cooper took the videos based upon the testimony of Gooden and Harbison.

11

### B.	Circumstantial Evidence

Is the remaining evidence sufficient to allow a rational jury to determine beyond a reasonable doubt that Cooper was the videographer?   Ownership of the camera proves ownership. Without more, it cannot prove beyond a reasonable doubt that the camera was used at a particular time by a particular person.   There is no evidence that Cooper had sole possession of the location from which the videos were made.   The evidence shows to the contrary.   The uncontroverted evidence shows that at least several other people had access to both locations over an extended period of time.

The question as properly sent to the jury in its charge, consonant with the indictment, asked whether it found

> from the evidence beyond a reasonable doubt that on or about the 2nd day of October, 2008, in Red River County, Texas, the defendant, WILLIAM ALLEN COOPER, did intentionally or knowingly commit the offense of Improper Photography or Visual Recording, by then and there, with intent to arouse or gratify the sexual desire of the defendant, record by videotape a visual image of another, namely, [Jane Doe] at a location that was not a bathroom or private dressing room, without the consent of the said [Jane Doe], then you shall find the Defendant guilty of improper visual recording as charged in the indictment.

By analogy, in many controlled substance cases, the issue is whether one, not in exclusive possession of the drug, has sufficient contact (links) to it to be jointly in possession.   If that were the only issue here, we would find no difficulty in affirming a jury finding that Cooper had possession of the camera—it was found in his house, the camera was his, etc.   But here, another step is required—there must be evidence that Cooper recorded the images.   Proving that he at one

12

time had possession of the video camera does not provide any evidence that he filmed the particular recordings involved. Under the review of the evidence required by *Brooks*, even in the light most favorable to the verdict, a rational jury could not conclude that this evidence is such as to permit it to find beyond a reasonable doubt that Cooper recorded those visual images.

We reverse the conviction and render a judgment of acquittal.

Jack Carter<br>
Justice

Date Submitted:    October 20, 2010
Date Decided:     November 16, 2010

Publish