

# Fourth Court of Appeals
## San Antonio, Texas

## DISSENTING OPINION

No. 04-19-00772-CR

Carlos **ROMO**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2018-CRF-001456-D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice
Dissenting Opinion by: Patricia O. Alvarez, Justice

Sitting:       Rebeca C. Martinez, Chief Justice
             Patricia O. Alvarez, Justice
             Liza A. Rodriguez, Justice

Delivered and Filed: May 26, 2021

I agree with the majority on the issues of waiver regarding the admission of Romo's Nudist HDV video, legal sufficiency of Counts I and II (Continuous Sexual Abuse of a Child Younger Than Fourteen Years of Age and Indecency with a Child), and the legality of the fine imposed against Romo at sentencing. I disagree with the majority, however, on the issue of legal insufficiency regarding Count III (Possession of Child Pornography). For this reason, I dissent in part.

I begin my dissent by describing the video at issue.

**NUDIST HDV VIDEO**

The very first element of the video that helps us know we are looking at child pornography is the label on the DVD labeled "100 percent genuine, fully-legal nudist documentary, Miss Jr. Teen Beauty Competition," which reads like a suspiciously over-enthusiastic guarantee for an educational documentary. The second indication is the opening screen of the video, which is a dog whistle for likeminded pedophiles:

**<u>NUDIST-HDV.COM NUDIST VIDEOS</u>**

| | |
|---|---|
| *Portrays Nudist Life in Simplicity* | *Violates No Federal Laws!!* |
| *From European Camps, Clubs and Areas* | *Depicts Entire Families* |
| *Is Not Sexually Oriented or Adult in Nature* | *Documentary and Educational Material* |

The video then opens on a naked woman with bikini tan lines and gold jewelry who is lounging on a towel talking to a nude young girl who is resting on her stomach. The girl wears a bandana headband with a kanji character on it. Next to them, a naked teen girl lounges back on her elbows with her breasts exposed. A naked man stands over them, and his penis is visible. The adult subjects are completely shaved, the teen is mostly shaved, and the young girl is prepubescent. Near them sits a young man in a polo shirt with no pants.

The shot cuts briefly away to several naked adults sitting around a table, but then returns to the girls. The naked teen continues to lounge back on her elbows, and the cameraman keeps her body framed in the shot. The cameraman gets the teen girl to smile, then focuses for a moment on the girl in the bandana headband sitting next to her.

The shot cuts to two teen girls who have entered the scene wrapped in towels. The cameraman talks to the girls in French as the girls unwrap their towels. Both girls have bikini tan lines. One has shaved some of her pubic hair. The other girl chooses to leave her underwear on.

Behind them in the background is another cameraman wearing a tank top with no pants. He films a scene next to them. His penis is visible. The girls parade for the camera, and the man in the polo shirt gives a little smile to the cameraman. A woman appears to tease the girls. The girl in the underwear rewraps herself in her towel before sitting on the blanket near the man in the polo shirt. The shot cuts back to the young girl in the bandana headband and simply rests on her face, her hair slightly blowing in the wind, before panning out to include her teen friend. The shot then zooms back again on the girl in the bandana headband. She sits cross-legged, and her bare chest is in view.

The next shot focuses on three young naked girls together, including the young girl with the bandana headband. The shot pans out to show five girls together, one of whom has reached puberty. She wears braces and has shaved some of her pubic hair. The shot frames the naked girls together and then cuts to three teen girls holding flowers and sashes in the gray, windy weather, apparently in preparation for the beauty pageant. They all have tan lines and partially shaved pubic hair. A naked man with a camera stands behind them. The shot focuses on the naked teens and then shifts back to the naked girls who are waiting with number placards. Sometimes the shot cuts off the tops of the girls' heads in favor of their naked bodies. One of the girls appears to object, and the cameraman appears to reassure her. All the girls walk over to an above-ground pool where they stand casually in line chatting with each other, waiting to be judged. The shot rests on the naked girls and ends with a male voice talking through a microphone.

## LEGAL SUFFICIENCY AND THE *DOST* FACTORS

"In reviewing the legal sufficiency of the evidence to support a criminal conviction, a court of appeals will determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt.'" *Perkins v. State*, 394 S.W.3d 203, 206 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

"Several federal courts have recognized that a photograph is lascivious when 'the photographer array[s] it to suit his particular lust,' noting that 'lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles.'" *Alexander v. State*, 906 S.W.2d 107, 110 (Tex. App.—Dallas 1995, no pet.) ("[W]hether the content of a photograph constitutes a lewd or lascivious exhibition of a child's genitals depends on the intent of the photographer.") (quoting *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987)); *see also Perkins*, 394 S.W.3d at 209 ("If the visual depiction is intended or designed to elicit a sexual response in the viewer, it is lewd.") (citing *Alexander*, 906 S.W.2d at 110).

The majority is correct that the *Dost* factors are an important guide for evaluating whether the video constitutes child pornography, *United States v. Dost*, 636 F. Supp. 828, 832–33 (S.D. Cal. 1986), but focusing too heavily on whether the girls are posed unnaturally or whether they exhibit a willingness to engage in sexual activity can cause the evaluator to miss this video for what it is, which is lewd exhibition of child genitalia. *See State v. Bolles*, 541 S.W.3d 128, 142–43 (Tex. Crim. App. 2017) (noting that that "we are not bound by *Dost* when assessing whether an image depicts a 'lewd exhibition.'").

In some cases, child pornography evidence has been confirmed to be lewd, not because children were portrayed engaging in sex, but rather because the videos at issue were shot in a voyeuristic style, which is considered exploitative. *See Perkins*, 394 S.W.3d at 209 (citing *United States v. Wolf*, 890 F.2d 241, 243, 247 (10th Cir. 1989) (holding that the image of partially nude sleeping child could constitute a "lascivious exhibition" for the purposes of 18 U.S.C. § 2256);

*State v. Myers*, 207 P.3d 1105, 1113 (N.M. 2009) (holding that images of children's genitals taken from a hidden camera as they used a toilet "had a voyeuristic and deviant quality" such that fact finder could have found that they were "lewd"); *People v. Sven*, 848 N.E.2d 228, 239 (Ill. App. Ct. 2006) (concluding that video depicting nude teenage girl bathing infant put viewer into "role of voyeur," thus rendering the images lewd)).

> The term "lewd exhibition" is capable of being interpreted by a trier of fact using any meaning which is acceptable in common parlance. Whether an image falls within the statutorily defined category of child pornography under Texas state law is a question that must be answered on a case by case basis. Thus, borrowing from what Justice Stewart famously observed about pornography in his concurring opinion in *Jacobellis v. Ohio*, we shall not attempt further to define the kinds of material we understand to be child pornography; and perhaps we could never succeed in intelligibly doing so. But we know it when we see it.

*Bolles*, 541 S.W.3d at 143 (citing *Jacobellis v. Ohio*, 378 U.S. 184 (1964)). Even in *Dost*, the factors set out for evaluating child pornography evidence are concluded with the following caveat: "Of course, a visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.' The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor." *Dost*, 636 F. Supp. at 832.

## ANALYSIS

The video itself is legally sufficient evidence that prevents us from taking the verdict away from the jury. This is so despite the fact that the actors are speaking in French, and that there is no translation into the English language.

Through the lens of the jury, and contrary to the majority's argument, after viewing the video, a jury could have ignored the disclaimer or the words depicting the naturist lifestyle of the film, or its "educational" or "documentary" purposes and seen the display as "lewd." Similarly, the jury could have decided that there was nothing remotely family-oriented or quotidian about a

series of junior teen beauty pageants for which a subscriber can pay to watch hundreds of hours of similar displays and decided that the display itself was lewd.

In applying the *Dost* factors, it is not clear from the video which camp or club or family is being depicted. It is also not clear which simple life is being portrayed since the focus of the video is on young girls' bodies and their teen counterparts' preparations for an unconvincing beauty pageant that takes place on the dead grass in front of an above-ground pool. Furthermore, it is unclear what should be educational about the film since the producer goes to no efforts to ensure that the viewer can understand what is going on in the film. Presumably, the video is meant for an American audience since the opening screen promises that the video violates no federal laws.

There truly appears to be no purpose to the film except to show naked girls. And while the cameramen are not spying on the young girls, they are taking advantage of the girls' compliant natures to compile shots of them naked, placing the viewer in the position of judge over the young girls' naked bodies. The girls are made to be the object of the male cameraman's gaze, and they appear uncomfortable at times as participants who have been volunteered for a strange, misplaced, sexually uncanny pageant. The artifice is apparent and not at all natural. The exhibition of young female forms in the video does in fact appear to be intended or designed to elicit a sexual response in a viewer who is specifically looking for videos featuring young, naked girls. Consequently, a rational juror could have concluded beyond a reasonable doubt that Romo's video was a lewd exhibition of child genitalia.

## CONCLUSION

For the reasons set forth above, I respectfully dissent in part and would affirm the trial court's judgment on Count III (Possession of Child Pornography).

Patricia O. Alvarez, Justice

PUBLISH