

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-24-00075-CR

---

ERIC AUSTIN MILLS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 97th District Court
Archer County, Texas
Trial Court No. 2023-0004A-CR

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

An Archer County[1] jury convicted Eric Austin Mills of possession with intent to promote child pornography, a second-degree felony, and assessed a sentence of twelve years' imprisonment with a $10,000.00 fine. *See* TEX. PENAL CODE ANN. § 43.26 (Supp.). The jury also found Mills guilty of tampering with physical evidence and assessed a sentence of two years' imprisonment with a $10,000.00 fine. *See* TEX. PENAL CODE ANN. § 37.09 (Supp.). On appeal, Mills argues that the evidence is legally insufficient to support either of his convictions. Because we find that legally sufficient evidence supports the jury's verdicts of guilt for both offenses, we affirm the trial court's judgments.

## I. The Evidence at Trial

The evidence at trial established that the child depicted in the alleged pornography was Michelle,[2] who was seventeen years old at the time of trial. Michelle testified that she was thirteen years old at the time of the offense and was living with her mother, Mills, and her two younger sisters. Because there was a shortage of bathroom space, Michelle showered in the master bathroom while her sisters used the home's other bathroom.

Michelle said that, in preparation for meeting her mother at church on Sunday, February 16, 2020, she showered in the master bathroom. Michelle testified that she had to go through the master bedroom, where Mills was present, to get to the shower. After her shower,

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

[2]We use pseudonyms to protect the identity of the child. *See* TEX. R. APP. P. 9.10.

Michelle walked past Mills while wrapped in a towel and went into her bedroom to decide what to wear. While dressing, Michelle noticed Mills's phone on her bookshelf "set behind something so that the camera was sticking out," and she was in "a lot of shock and surprise." Michelle saw that the camera was recording and immediately called her mother, Jenny, who rushed home from church. Michelle said she watched a small portion of the recording that showed herself, she "freak[ed] out," and she deleted the recording.

When Jenny arrived home, she went straight to Michelle's bedroom, she "went to [Mills's] photo albums and to the trash file [on his phone] and pulled [the recording] back up, [and] scanned [or watched] the video." The recording, which was played for the jury, depicted Mills setting up the camera in Michelle's bedroom and attempting to conceal it. Once that task was completed, Mills dashed out of Michelle's room and back into the master bedroom. The recording then showed Michelle enter the room wrapped in a towel. The child, who was wearing only panties, removed the towel and exposed her post-pubescent breasts to the camera while drying her hair with the towel. While exposed, the child bent down in front of the camera to retrieve a box of Valentine's chocolate, which she ate while examining her clothing options for church. Still undressed, the child turned toward the bookshelf, noticed the phone, picked it up to see that it was still recording, and turned the recording off.

Michelle talked to her mother about the recording while in tears. Michelle testified that Mills had never asked her to take a photo or recording of her before and had never inappropriately touched her.

3

According to Jenny, Mills appeared "[s]hocked and afraid" when she asked him where his phone was. Jenny confronted Mills about the recording and asked him to give her some sort of explanation as to why his phone was recording in Michelle's bedroom. When Mills was unable to provide any explanation, Jenny then told him to leave. Jenny testified that Mills pleaded with her to get his phone back but that she refused to return the phone.

Jenny said that she was on a different phone with her sister when Mills's phone, which was on the counter in front of her, "flashed, . . . came on and then shutoff." Jenny testified that, when she checked Mills's phone, it was as if "it had never been used, like, if you bought it at the store. It was . . . set back to, like, factory default settings." Jenny also testified that she found another recording in Mills's photo albums that showed "[h]im coming in and setting up the phone [in] pretty much the same place, [Michelle] coming out of the shower in a towel and coming into her room to get dressed," removing the towel to expose her breasts, "and then changing." According to Jenny, the other recording was destroyed after the phone's factory reset and could not be found. Matt Kelly, a Texas Ranger, testified that he executed a search warrant for Mills's Facebook account and said that he was able to locate the February 16 recording depicting Michelle in Facebook records. Kelly obtained forensic downloads from Mills's cell phone, but it "appeared generally void of what you would find on a phone that's normally used."

After the incident, but also on February 16, Jenny communicated with Mills through Facebook messenger and asked him why he had reset his phone. In response, Mills said, "I'm in a corner and went into survival mode, I'm screwed, what else can I do, I've lost my family, my scouting career, and maybe work." On February 17, Mills apologized to Jenny and said, "I have

4

disgraced my name and my family." Mills also said, "[I]t's my fault and I'm not going to deny that." After Jenny advised Mills to turn himself in, Mills responded, "[G]oing to prison really kills me." He admitted, "I f[---]ed up big time, I'm a pervert, a voyeur filled with lust. . . . I'm going to seek counseling and God. . . . I need help to overcome these demons in me." Mills continued by saying, "I'm so disappointed in myself, I was going to vow myself to just you and cut out the porn, I don't know what came over me when I woke up on Sunday, but I will regret and never forget it."

Jenny testified that she had marital issues with Mills because of him trying to record her without consent. Jenny said that, on one occasion, she found "his camera set up on the dresser . . . facing the bed" after the two had engaged in sexual intercourse. Jenny testified that she made Mills delete that recording. On another occasion, she found Mills recording her while she was unclothed.[3]

Mills testified in his defense, stating that it was not his intent to create child pornography. Instead, he said that the purpose of the recording was to catch Michelle with candy in her room. He testified that Michelle did not knock on the master bedroom door before entering it, that he was in the bed, and that he scolded Michelle and went into "punishment mode." Mills said that the "first thing that really came to [his] mind because [he had] just given all the girls Valentine's, candy bears and all that, [he] was - - [ready] just to take that away because that was something tangible, that was in sense [his], that [he] gave to her." Jenny had testified that the children were

---

[3]Mills claimed that he recorded Jenny for the purpose of showing his counselor the difficulties he was experiencing during intimacy, but admitted it was not appropriate to show anyone a recording of Jenny having sexual intercourse without her permission.

not allowed to have food in their rooms because it tended to attract bugs. She said that the likely punishment for Michelle if she had candy in her room would be to confiscate it, search her room for other food, and possibly ground her "from something."

Mills did not remove the candy from Michelle's room, instead he chose to film her. Later, Mills admitted that Michelle was allowed to have the Valentine's candy he had given her in her room. As a result, he clarified that the purpose of the recording was to catch her eating the candy because he had just grounded her from eating it. When asked about the prior recording taken in Michelle's room, Mills said that its purpose was to catch Michelle on the phone after she had been grounded from it, but he also said that he never discussed the recording or its contents with Jenny and instead deleted it.

Maintaining his innocence, Mills testified that he did not intend to film Michelle's breasts and that he had no sexual interest in the recording, which he did not watch since Jenny had his phone. Mills admitted that he had stopped at the Sprint store to "wipe" his phone but testified that it was because his phone housed his financial data, his relationship with Jenny had deteriorated, and he was expecting a divorce. Mills said that he was not trying to hide evidence by resetting his phone because he did not even know he had committed any crime at the time. When asked about his Facebook comments to Jenny, including his admission to being a "voyeur," Mills claimed he did not know the meaning of the word and that he was merely repeating things he had heard Jenny's sister say about him.[4]

---

[4]David Michael Sabine, a clinical psychologist, testified that he treated Mills from February 2020 to August 2022 but that Mills made no statements about the offenses.

After hearing the evidence, the jury convicted Mills of both offenses alleged in the State's indictment.

## II.    Standard of Review

"In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational fact[-]finder could have found the crime's essential elements beyond a reasonable doubt." *Mayfield v. State*, 676 S.W.3d 244, 249 (Tex. App.—Fort Worth 2023, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017)).  "This standard gives full play to the fact[-]finder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.* (citing *Jackson*, 443 U.S. at 319; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021)).  "We determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict."  *Id.* (citing *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence.")).  "We must presume that the fact[-]finder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution."  *Id.* (citing *Braughton*, 569 S.W.3d at 608).  "Reversal on evidentiary-sufficiency grounds is restricted to the 'rare occurrence' when a fact[-]finder does not act rationally."  *Id.* (quoting *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018) (citing *Morgan v. State*,

7

501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014) (stating that a reviewing court should not act as a "thirteenth juror")).

"To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial." *Id.* (citing *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021)). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 249–50 (citing *Hammack*, 622 S.W.3d at 914). "The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations." *Id.* at 250 (citing *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021)).

### III. Sufficient Evidence Supports the Jury's Finding of Guilt for Possession of with Intent to Promote Child Pornography

"A person commits an offense if . . . the person knowingly or intentionally possesses . . . visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct . . . ." TEX. PENAL CODE ANN. § 43.26(a)(1). As relevant here, the term "[s]exual conduct" means "lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." TEX. PENAL CODE ANN. § 43.25(a)(2) (Supp.). A person also commits this offense if "(1) the person knowingly or intentionally promotes or possesses with intent to promote material described by Subsection (a)(1); and (2) the person knows that the material depicts the child as described by

8

Subsection (a)(1)." TEX. PENAL CODE ANN. § 43.26(e). The term "[p]romote" includes "to procure" or "manufacture." TEX. PENAL CODE ANN. § 43.25(a)(5) (Supp.).

The State's indictment alleged that Mills intentionally or knowingly promoted by manufacturing or possessing with the intention of promoting "material that visually depicted, and which the defendant knew visually depicted, a child who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, namely lewd exhibition of the female breast below the top of the areola."

Mills does not dispute that he set up his cell phone in Michelle's bedroom to make a recording or that he knew that she was underage. Rather, Mills argues (1) the content was not lewd because it does not meet the six factors under *United States v. Dost* to evaluate whether a visual depiction constitutes child pornography and (2) that he did not have the required intent because nothing showed "that Mills intended or knew that the cell phone [recording] would capture [Michelle] engaging in sexual conduct." *See United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. by United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *and aff'd*, 813 F.2d 1231 (9th Cir. 1987).

The Texas Court of Criminal Appeals noted that "[t]he Texas Legislature has not statutorily defined 'lewd exhibition.'" *Romo v. State*, 663 S.W.3d 716, 719 (Tex. Crim. App. 2022). As a result, "[t]he meaning of the phrase is a matter of law that we review *de novo*." *Id.* Accordingly, "when determining whether any rational trier of fact could have found [Mills] guilty beyond a reasonable doubt, we conduct a *de novo* review to determine whether the [recording] constitutes child pornography." *Id.*

9

To assist in such analysis, the Texas Court of Criminal Appeals adopted the following *Dost* factors that are "used to evaluate whether a visual depiction constitutes child pornography":

1)      whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2)      whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3)      whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4)      whether the child is fully or partially clothed, or nude;

5)      whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]

6)      whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* at 720 (quoting *Dost*, 636 F.Supp. at 832). Because the question of "[w]hether an image constitutes child pornography under Texas law is determined on a case by case basis," "no single [*Dost*] factor is dispositive." *Id.* "This determination is made based on the overall content of the visual depiction, while also considering the minor's age." *Id.* "The focus is on whether the depiction—not the minor—brings forth the genitals[, female breasts,] or pubic area to excite or stimulate." *Id.*; *see State v. Bolles*, 541 S.W.3d 128, 141 (Tex. Crim. App. 2017).

Accordingly, even in the absence of the first, second, and fifth *Dost* factors, the Texas Court of Criminal Appeals has found that a visual depiction constituted child pornography. *See Romo*, 663 S.W.3d at 722. In doing so, they agreed with a dissenting justice's comment that "federal courts have recognized that a photograph is lascivious when 'the photographer array[s]

10

it to suit his particular lust,' noting that 'lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles.'" *Id.* at 721 (alteration in original) (quoting with approval *Romo v. State*, 629 S.W.3d 679, 690 (Tex. App.—San Antonio 2021) (Alvarez, J., dissenting), *rev'd by* 663 S.W.3d 716). Applying the *Dost* factors, we reach the same result.

Here, the recording does not focus on Michelle's genitals or breast, and the recording's setting is not sexually suggestive. While the recording does not show Michelle in an unnatural pose, it shows her wearing only panties, with her breasts exposed. Given that Michelle was thirteen, that was inappropriate attire. *See id.* at 721. The recording does not suggest sexual coyness or any willingness to engage in sexual activity. Even so, the exhibition of the child's breasts, which appeared mature, "does appear to be designed to elicit a sexual response in a viewer who is specifically looking for [recording]s featuring young, [partially] naked girls." *Id.* at 721–22. Moreover, it is clear from the recording that Michelle did not know that she was being filmed, which could "appeal to deviant and voyeuristic interest[s] of the viewer," leading to the conclusion that "the images were intended or designed to elicit a sexual response." *Bolles*, 541 S.W.3d at 142 (quoting *Perkins v. State*, 394 S.W.3d 203, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd)).

The Texas Court of Criminal Appeals has noted that "[recording]s of a teenage girl dressing and undressing in her bedroom [a]re 'lewd' because they reflect[] an 'invasion of personal privacy . . . and the exploitation of an innocent child victim.'" *Id.* at 141 (quoting *Perkins*, 394 S.W.3d at 210). Likewise, we find that the recording constituted child

11

pornography, namely the lewd exhibition of the female breast below the top of the areola. *See* TEX. PENAL CODE ANN. § 43.25(a)(2).

Next, we address Mills's complaint that evidence of his intent was legally insufficient. Mills argues that nothing showed that he knew the cell phone would capture Michelle engaging in sexual conduct. We disagree because "[i]ntent may . . . be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant," and Mills's actions before, during, and after the offense contained indicia of guilt. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

The evidence at trial showed that Mills had previously filmed Jenny while naked without her consent and, given our analysis below, the jury was free to find that Mills did the same with Michelle. Michelle regularly showered in the master bedroom and, according to Jenny, Mills had previously recorded Michelle's exposed breasts after she had come out of the master bathroom shower. On February 16, 2020, Michelle had walked past Mills and into the bathroom to shower. During her shower, Mills went into Michelle's bedroom, quickly set up his phone camera, and dashed back to the master bedroom. Although he claimed that the purpose of the recording was to catch Michelle eating candy, the jury was free to reject his self-serving testimony since the candy could have easily been removed from her room. The jury could have also found Mills's claim disingenuous because he had testified that the prior recording of Michelle's post-shower routine, which resulted in exposure of her breasts, was to catch her on the phone after she had been grounded, but the evidence shows that Mills never discussed the prior recording with Jenny. As a result, the jury was free to find that Mills set up his phone to

12

record in Michelle's room because he knew she would only be clothed in a towel and would have to remove the towel to get dressed. Thus, the jury could find that Mills wanted to film Michelle while her breasts were exposed.

Such intent could also be inferred from Mills's actions after Jenny was alerted to the recording's contents. According to Jenny, Mills was given an opportunity to explain why he was recording Michelle in her bedroom but failed to offer any explanation. Jenny testified that Mills pleaded with her to get his phone back but that she refused. The jury could have found that Mills deleted the contents of his phone because he was aware that it could incriminate him. Later during the day of the incident and the following day, Mills made comments to Jenny suggesting guilt when he called himself a pervert and a voyeur. Accordingly, the jury could conclude that Mills knew that his phone contained child pornography when he commented that the thought of "going to prison really kill[ed him]."

After viewing the evidence in the light most favorable to the jury's verdict, we find that the evidence was legally sufficient to show, beyond a reasonable doubt, that Mills intentionally or knowingly promoted child pornography by manufacturing material that visually depicted, and which Mills knew visually depicted, Michelle, a thirteen-year-old child, engaging in the sexual conduct of the lewd exhibition of her female breast below the top of the areola. As a result, we overrule Mills's first point of error.

## IV. Sufficient Evidence Supports the Jury's Finding of Guilt for Tampering with Physical Evidence

In his second point of error, Mills argues that the evidence was insufficient to show that he tampered with evidence. Tampering with physical evidence has the following "three elements: '(1) knowing that an investigation or official proceeding is pending or in progress,[5] (2) a person alters, destroys, or conceals any record, document, or thing, (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding.'" *Carnley v. State*, 366 S.W.3d 830, 833–34 (Tex. App.—Fort Worth 2012, pet. ref'd) (quoting *Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008) (plurality op.)).[6] Here, the State's indictment alleged that Mills,

> knowing that an offense had been committed, namely possession and/or promotion of child pornography, intentionally and knowingly alter[ed], destroy[ed], or conceal[ed] a record and/or visual material, namely visual material recorded on the defendant's cellular device, that depicted [Michelle,] a child younger than 18 years-of-age at the time the visual material was made, engaging in sexual conduct, with intent to impair its availability as evidence in any subsequent investigation or official proceeding related to the offense.

Here, Mills argues only that he did not know that a crime was committed since Jenny did not return the phone to Mills so that he could see the contents of the recording.

Even though Mills did not see the content from the February 16 recording, the jury was free to find that Mills knew it contained evidence of a crime. This is not just because the

---

[5]"In the context of this statute, 'pending' means 'impending, or about to take place.'" *Stahmann v. State*, 548 S.W.3d 46, 58 (Tex. App.—Corpus Christi–Edinburg 2018), *aff'd*, 602 S.W.3d 573 (Tex. Crim. App. 2020) (quoting *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)).

[6]"The question is thus whether Appellant intended to impair the [recording]'s availability as evidence . . . not whether []he actually impaired its availability as evidence." *Carnley*, 366 S.W.3d at 835.

14

February 16 recording that Mills deleted while resetting his phone contained child pornography, but also because (1) Jenny testified that Mills had another recording of Michelle's exposed breasts on his phone, which was lost after the factory reset, and (2) Mills himself commented that he was a pervert and voyeur that could go to prison. Mills's comments also show that he was aware that he would be criminally investigated.

We find that the evidence, when viewed in the light most favorable to the jury's verdict, was legally sufficient beyond a reasonable doubt that Mills tampered with evidence. As a result, we overrule Mills's second point of error.

## V.    Conclusion

We affirm the trial court's judgments.

Scott E. Stevens
Chief Justice

Date Submitted:    October 14, 2024
Date Decided:      November 6, 2024

Do Not Publish

15